**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**BASF CORPORATION,**

                                    **Plaintiff,**                          **REPORT AND**
                                                       **RECOMMENDATION**

           **-against-**                                      **20-CV-4797 (NGG) (RLM)**

**PRIME AUTO COLLISION INC.** *d/b/a* **Prime Auto,**

                                    **Defendant.**
------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

On October 6, 2020, plaintiff BASF Corporation ("BASF" or "plaintiff") commenced this diversity action against defendant Prime Auto Collision Inc. ("defendant"), alleging claims for breach of contract and unjust enrichment. See generally Complaint (Oct. 6, 2020) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.[1]  Plaintiff's Complaint seeks damages and a declaratory judgment, as well as costs and fees.  See id.  Currently pending before this Court, on a referral from the Honorable Nicholas G. Garaufis, is plaintiff's motion for default judgment against defendant.  See Order Referring Motion (Nov. 8, 2021) ("Referral Order"); Motion for Default Judgment (Mar. 5, 2021) ("Pl. Mot."), DE #13; Memorandum in Support of Motion for Default Judgment (Mar. 5, 2021) ("Pl. Mem."), DE #13-1.  For the reasons that follow, this Court respectfully recommends that plaintiff's motion for default judgment be granted in part and denied in part, and that plaintiff be awarded damages as set forth below.

---

[1] There is complete diversity between plaintiff (a citizen of Delaware and New Jersey) and defendant (a citizen of New York), and the amount in controversy exceeds $75,000.00.  See Compl. ¶¶ 6, 27; see also 28 U.S.C. § 1332.

## BACKGROUND

The following facts, drawn from plaintiff's pleading, stand uncontested:

BASF is a company that sells "aftermarket paints, refinishes, coating, primers, thinners, and reducers[,] as well as other related products and materials for the reconditioning, refinishing, and repainting of automobiles, trucks, and other vehicles (collectively, 'Refinish Products')." Compl. ¶ 4.  BASF is a Delaware corporation, with its principal place of business in New Jersey.  See id. ¶ 1.  Defendant, a New York corporation based in Brooklyn, is an automotive body shop that provides reconditioning and refinishing services for automobiles, trucks, and other vehicles.  See id. ¶¶ 2, 5.

According to the Complaint, on May 22, 2017, defendant entered into a contract with plaintiff (the "Contract"), pursuant to which defendant agreed to fulfill one hundred percent of its requirements for Refinish Products with the BASF brand from BASF authorized distributors, up to a minimum purchase requirement of $307,000.00.  See id. ¶¶ 9-10, 15; Requirements Agreement dated May 22, 2017 (docketed on Oct. 6, 2020) ("Requirements Agreement") ¶ 1, DE #1-1.  Plaintiff paid defendant $35,000.00 as consideration for defendant's performance and fulfillment of the terms of the Contract; defendant agreed to return this consideration to plaintiff in the event that the Contract was terminated.  See Compl. ¶¶ 11-12; Requirements Agreement ¶ 3.  In addition, plaintiff agreed to loan defendant certain BASF equipment to be used with the Refinish Products, and defendant agreed to return this equipment to plaintiff (or pay plaintiff the value of the consumed inventory) when the Contract ended.  See Compl. ¶¶ 13-14; Requirements Agreement ¶ 5.  The parties also agreed that any

disputes arising out of the Contract would be governed by Michigan state law.  See Compl. ¶ 8; Requirements Agreement ¶ 7.

By December 2018, defendant had ceased purchasing BASF Refinish Products from BASF distributors and closed its business, thereby terminating the Contract, at which point defendant had purchased only $12,607.00 worth of BASF Refinish Products.  See Compl. ¶¶ 15, 17.  Plaintiff alleges that defendant consequently failed to fulfill $294,393.00 of the $307,000.00 minimum purchase requirement.  See id. ¶ 17.  Plaintiff further alleges that, in violation of the Contract, defendant failed to return to plaintiff the $35,000.00 in consideration paid, or the BASF equipment or the value thereof (which the pleading claims is $21,000.00).  See id. ¶¶ 18-19.

Plaintiff commenced this action on October 6, 2020.  See generally Compl.  Defendant was timely served with process via the New York Secretary of State, see Summons Returned Executed (docketed on Oct. 26, 2020) ("Executed Summons"), DE #7, but failed to answer or respond to the Complaint.  Following defendant's failure to respond to the Complaint, plaintiff requested that a Certificate of Default be entered against defendant, see Request for Certificate of Default (Dec. 11, 2020), DE #8, and the Clerk of the Court noted the default, see Clerk's Entry of Default (Dec. 17, 2020), DE #9.

Thereafter, on March 5, 2021, plaintiff moved for default judgment against defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure (the "FRCP"), see Pl. Mot. at 1, and, on November 8, 2021, the Honorable Nicholas G. Garaufis referred the pending motion to the undersigned magistrate judge for preparation of a report and recommendation, see

3

Referral Order.  As of the date of this opinion, defendant has neither responded to the Complaint nor otherwise appeared in this action.

On November 24, 2021, after reviewing plaintiff's default judgment papers, this Court directed plaintiff to supplement its submissions to address a series of issues, including providing evidence of BASF's damages and the market value of the BASF equipment loaned to defendant.  See Scheduling Order (Nov. 24, 2021) ("11/24/2021 Order") at 1-2, DE #15.  On December 15, 2021, plaintiff filed its supplemental memorandum and requested the opportunity to submit documentation in support of the purported value of the BASF equipment for the Court to review in camera.  See generally Memorandum Supplementing Motion for Default Judgment in Response to ECF 15 (Dec. 15, 2021) ("Supp. Mem."), DE #17.  The Court denied plaintiff's request as procedurally improper, explaining that, in order to restrict access to documents submitted to the Court, plaintiff should comply with this Court's Individual Rules by filing a motion for leave to electronically file a document under seal.  See Amended Order (Dec. 16, 2021) ("12/16/2021 Order").  As of the date of this opinion, plaintiff has not filed any such request or otherwise provided additional evidence.

## DISCUSSION

### I.    Service of Process

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint."  SEC v. Anticevic, No. 05 CV 6991(KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing, inter alia, Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)).  Nevertheless, before entering a default judgment, the Court should confirm that defendant was duly served and notified of this lawsuit.  See LG Capital Funding, LLC v. Volt Solar Sys.,

<u>Inc.</u>, 15 Civ. 1404 (KAM) (VMS), 2016 WL 11447845, at *4 (E.D.N.Y. Aug. 15, 2016), <u>adopted</u>, 2016 WL 4718014 (E.D.N.Y. Sept. 9, 2016).

Rule 4 of the FRCP permits service of a corporation in a manner authorized by the law of the forum state.  <u>See</u> Fed. R. Civ. P. 4(h)(1)(A).  New York law provides for service of process on a corporation through New York's Secretary of State.  <u>See</u> N.Y. Bus. Corp. Law § 306(b)(1).  Plaintiff served defendant with the summons and Complaint through the New York Secretary of State.  <u>See</u> Executed Summons.  Accordingly, plaintiff properly served and notified defendant of this action.[2]

## II.    <u>Default Judgment Standard</u>

After the Clerk of the Court enters a Certificate of Default, the District Court may, on application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.  <u>See</u> Fed. R. Civ. P. 55(a)-(b); <u>see also</u> S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(a)-(b).  "A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages."  <u>Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.</u>, 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) (citing <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992)); <u>see also</u> Fed. R. Civ. P. 8(b)(6).  The plaintiff bears the burden of establishing damages, <u>see</u> <u>Greyhound Exhibitgroup</u>, 973 F.2d at 158, which the court must "ascertain . . . with reasonable certainty[,]" <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted),

---

[2] Plaintiff also complied with Local Civil Rule 55.2(c) by mailing a copy of its motion for default judgment to defendant via the United States Postal Service at defendant's last known address, as well as to the address for the New York Secretary of State.  <u>See</u> S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(c) ("[A]ll papers submitted to the Court . . . shall simultaneously be mailed to the party against whom a default judgment is sought at . . . the last known business address of such party (if a person other than an individual).");  Certificate of Service for Motion for Default Judgment (docketed on Mar. 5, 2021), DE #14.

either by evaluating affidavits or documentary evidence, see Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989), or, in its discretion, by holding an evidentiary hearing, see, e.g., Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).

## III.    Choice of Law

This Court must also determine what law should be applied to plaintiff's claims.  See, e.g., D'Amato v. Five Star Reporting, Inc., 80 F.Supp.3d 395, 407 (E.D.N.Y. 2015) ("As an initial matter, the Court must determine what law should be applied to the [p]laintiff's common law breach of contract and equitable claim[] for unjust enrichment[.]").  The instant case was predicated upon diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1).  The Second Circuit has held that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits.  See Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state." (citation omitted)).  "For contract claims, New York applies a 'grouping of contacts' or 'center of gravity' approach" to determine whether to apply New York substantive law.  Star Ins. Co. v. Champion Constr. Servs. Corp., No. 13 CV 3635(ARR)(RML), 2014 WL 4065093, at *2 (E.D.N.Y. July 30, 2014) (citations omitted), adopted, 2014 WL 4065094 (E.D.N.Y. Aug. 15, 2014).  In making this determination, "the [C]ourt should consider '(1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.'"  Id. at *2 (quoting Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998)).

Here, the Contract includes a choice-of-law provision, which sets forth that Michigan state law governs the claims arising out of the performance or non-performance of the parties' obligations thereunder.  See Requirements Agreement ¶ 7.  "New York courts will generally honor a choice-of-law provision in an agreement" between the parties.  Scharnikow v. Siracuse, 15-CV-6991 (DRH) (SIL), 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citation omitted), adopted, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016).  However, the Court may only "apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."  Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000) (citation omitted); accord Star Ins. Co., 2014 WL 4065093, at *3.  Under New York law, the Court has discretion to "decline to enforce choice-of-law provisions if the chosen law does not bear a reasonable relationship to the parties or the transaction."  Frankel v. Citicorp Ins. Servs., Inc., 913 N.Y.S.2d 254, 259 (2d Dep't 2010) (citations omitted); see also Star Ins. Co., 2014 WL 4065093, at *3 (collecting cases and concluding that, "[i]n this case, there are insufficient contacts with Ohio for the choice-of-law provision to be valid or enforceable").

According to the Complaint, neither party is a citizen of Michigan.  See Compl. ¶¶ 1-2 (alleging plaintiff is incorporated under Delaware law, with its principal place of business in New Jersey, and defendant is organized under New York law, with its principal place of business in Brooklyn).  Nor does plaintiff allege that the negotiation of the Contract or signing thereof took place in Michigan.  Moreover, although it appears that BASF has a location in Michigan, see Requirements Agreement at 1, the Complaint alleges no facts that connect the transaction between the parties to that state.  Therefore, and in the absence of any conflict

between Michigan and New York law, "Michigan has insufficient contacts with the dispute, and Michigan law need not be applied." BASF Corp. v. Gabriel's Collision Norman Ave., Inc., No 21-cv-1908 (ENV)(RER), 2022 U.S. Dist. LEXIS 7238, at *5 n.2 (E.D.N.Y. Jan. 12, 2022) ("Gabriel's Collision") (citations omitted). Accordingly, consistent with a series of decisions involving similar choice-of-law provisions in BASF contracts, this Court applies the law of the forum state (here, New York law) to BASF's claims.[3] See id.; see also BASF Corp. v. Exotic Collision Ctr., Inc., Case No. 2:18-CV-09350-RGK-SS, 2019 WL 6317772, at *4 (C.D. Cal. Apr. 11, 2019) ("Exotic Collision Ctr.") (applying the forum state's law to BASF's claims arising out of a requirements contract, despite a Michigan choice-of-law provision, because neither party resided or was domiciled in Michigan; there was no indication the contract was negotiated in Michigan; and the complaint did not reflect any facts showing a connection to Michigan); accord BASF Corp. v. Laguna Beach Collision Ctr., Inc., 8:18-cv-00637-JLS-DFM, 2018 U.S. Dist. LEXIS 164701, at *7 (C.D. Cal. Sept. 25, 2018) ("Laguna Beach Collision Ctr."); BASF Corp. v. Waterpaper, Inc., Case No. 2:18-cv-04415-ODW(GJS), 2018 WL 5816098, at *3 (C.D. Cal. Nov. 5, 2018); BASF Corp. v. Al's Body Shop of Huntington Park, Inc., CV 19-4306-RSWL-JPR, 2019 WL 7865172, at *3 (C.D. Cal. Nov. 7, 2019); see also Star Ins. Co., 2014 WL 4065093, at *3.

---

[3] The choice-of-law provision in this case appears in a section of the Contract that also contains a provision, which plaintiff has chosen not to enforce, that "[e]ach party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement." Requirements Agreement ¶ 7. "However, a forum selection clause is not jurisdictional and the right to attack the forum is personal and waivable." Nat'l Credit Adjusters, LLC v. Cred X Debt Recovery, LLC, Case # 15-CV-861-FPG, 2019 WL 1076085, at *2 n.2 (W.D.N.Y. Mar. 7, 2019) (citation omitted); see Lurie v. Norwegian Cruise Lines, Ltd., 305 F.Supp.2d 352, 356-57 (S.D.N.Y. 2004); Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371 (2d Cir. 1966). In the instant case, by failing to appear, defendant has waived any challenge to venue in this District and, in any event, defendant is based in the Eastern District New York. The forum selection clause thus does not oust this Court of venue over the case or personal jurisdiction over defendant.

IV.    **Liability**

    A.    **Breach of Contract**

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011)). Plaintiff has, at this procedural stage, pleaded sufficient facts to establish that defendant breached the Contract.

As to the first element—the existence of a contract—the Complaint alleges, and the submitted documentation supports, that plaintiff and defendant entered into a contract under which defendant agreed, amongst other provisions, to fulfill one hundred percent of its requirements for Refinish Products with the BASF brand from BASF distributors, up to a minimum purchase requirement of $307,000.00. See Compl. ¶ 10; Requirements Agreement ¶ 2 (providing that defendant agrees to "purchase from an authorized BASF distributor one hundred percent (100%) of [its] Refinish Products requirements for [its] [b]usiness specifying only BASF . . . brand products"). Plaintiff has adequately alleged that an enforceable contract existed between the parties.

Plaintiff further alleges that it performed its obligations, thereby satisfying the second element, in that plaintiff paid the requisite consideration to defendant ($35,000.00) and "remains ready, willing, and able to perform all obligations, conditions, and covenants required under the [Contract]." Compl. ¶ 20. As to the third element (defendant's breach), plaintiff alleges that defendant breached the Contract by failing to fulfill the $307,000.00

minimum purchase requirement, and by failing to return plaintiff's consideration and equipment or the market value thereof.  See id. ¶¶ 17-19, 21.  Finally, the pleading alleges that it suffered damages in the amount of $350,393.00 as a result of defendant's failure to perform its obligations under the Contract.  See id., *ad damnum* clause.

Having pled each element of the first cause of action, plaintiff has established its claim for breach of contract under New York law.

### B.    Unjust Enrichment

Plaintiff also brings a claim for unjust enrichment.  See Compl. ¶¶ 30-36.  "[T]o succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]'"  Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) (quoting Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004)).  However, where the "matter is controlled by contract," the unjust enrichment claim, which seeks to recover in quasi-contract, is properly dismissed as duplicative.  Marshall v. Hyundai Motor Am., 51 F.Supp.3d 451, 471 (S.D.N.Y. 2014) (citations omitted); see also Copperwood Cap. LLC v. JAG Staffing & Consulting Servs., Inc., No. 20-CV-1406 (EK) (RER), 2021 WL 919871, at *3 (E.D.N.Y. Feb. 10, 2021) ("New York law does not permit recovery under unjust enrichment where such claims are duplicative of a breach of contract claim and the court has determined that there is an enforceable contract that governs the same subject matter." (citation omitted)), adopted, 2021 WL 918312 (E.D.N.Y. Mar. 10, 2021).  "[C]laims are duplicative of one another if they arise from the same facts and do not allege distinct damages."  NetJets

Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citations, quotation marks, and ellipses omitted).

Here, plaintiff's unjust enrichment claim is duplicative of its claim for breach of contract: it arises from the same facts and seeks the same relief.  Compare Compl. ¶¶ 22-29 with id. ¶¶ 30-36.  Moreover, as discussed above, plaintiff has established that an enforceable contract exists between the parties.  This Court therefore respectfully recommends that plaintiff's motion for default judgment be denied with respect to its unjust enrichment claim and that this claim be dismissed as duplicative of plaintiff's breach of contract claim.  See LG Capital Funding, LLC v. Ubiquity, Inc., 16-CV-3102 (LDH) (SMG), 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017) (recommending that the District Court grant default judgment and dismiss unjust enrichment claim as duplicative of breach of contract claim), adopted, 2017 WL 3168961 (E.D.N.Y. July 25, 2017); Cont'l Cas. Co. v. Contest Promotions NY, LLC, 15-CV-501 (MKB), 2016 WL 1255726, at *3-4 (E.D.N.Y. Mar. 28, 2016) (denying in part motion for default judgment and dismissing unjust enrichment claim as duplicative of breach of contract claim); Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC, No. 13–cv–6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (dismissing sua sponte plaintiff's unjust enrichment claim as duplicative of its breach of contract claim where "there [was] an enforceable agreement and the same damages [were] sought" (citation omitted)); Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC, No. 13 CV 4358(PKC)(LB), 2014 WL 2169769, at *5 (E.D.N.Y. May 23, 2014) (recommending denial of motion for default judgment with respect to plaintiff's unjust enrichment claim because it was "based upon its contract with defendant"), adopted, 2014 WL 2765793 (E.D.N.Y. June 18, 2014); Ainbinder

v. Money Ctr. Fin. Grp., Inc., No. CV 10–5270(SJF)(AKT), 2013 WL 1335997, at *8 (E.D.N.Y. Feb. 28, 2013) (recommending denial of motion for default judgment as to unjust enrichment claim where "there [was] an express contract governing the matter" (citation omitted)), adopted, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013).

## V.    Declaratory Relief

While plaintiff's pleading requests that the Court award a declaratory judgment, see Compl. ¶¶ 37-40, the instant motion for default judgment fails to request such relief and sets forth no arguments as to why a declaratory judgment is appropriate under these circumstances, see generally Pl. Mot.; Pl. Mem.  Thus, the Court recommends that plaintiff not be granted declaratory relief.

## VI.    Damages

Plaintiff requests a total of $350,393.00 in monetary damages, which is comprised of the unfulfilled minimum purchase requirement ($294,393.00), the consideration paid to defendant by plaintiff ($35,000.00), and the purported value of the BASF equipment loaned to defendant by plaintiff ($21,000.00).  See Pl. Mem. at 7-8.  Though defendant, by defaulting, admits all well-pleaded allegations pertaining to liability, the Court has discretion to determine whether plaintiff has substantiated its damages request.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015).  "[T]he moving party bears the burden of providing a reasonable basis for determination of damages and should not be awarded damages if the evidence is not adequate." In re Crazy Eddie Sec. Litig., 948 F.Supp.1154, 1160 (E.D.N.Y. 1995).

Under New York law, damages for breach of contract "attempt[] to secure to the injured party the benefit of [the] bargain, subject to the limitations that the injury . . . was foreseeable, and that the amount of damages claimed be measurable with a reasonable degree of certainty and, of course, adequately proven." Terwilliger v. Terwilliger, 206 F.3d 240, 248 (2d Cir. 2000) (quoting Freund v. Washington Square Press, Inc., 34 N.Y.2d 379, 382 (N.Y. 1974)); see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007) (under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms" (citation omitted)); accord LG Capital Funding, LLC v. Wowio, Inc., 16-CV-6632 (AMD), 2018 WL 3202077, at *10 (E.D.N.Y. Apr. 24, 2018), adopted, 2018 WL 2224991 (E.D.N.Y. May 15, 2018).  For the following reasons, this Court recommends awarding plaintiff damages totaling only $35,000.00 in connection with plaintiff's breach of contract claim.

### A.    Minimum Purchase Requirement

Plaintiff first requests $294,393.00 as that part of its damages award related to defendant's unfulfilled portion of the minimum purchase requirement for BASF products under the Contract.  See Pl. Mem. at 7-8.  In support of its request, plaintiff asserts that defendant "purchased only $12,607.00 in BASF Refinish Products[,] . . . leaving a purchase balance of $294,393.00 due and owing[.]"  Id. at 7; see also Compl. ¶ 27.  Conspicuously absent from plaintiff's argument is any identification of the entity or entities to whom the purchase balance is due and owing.  As discussed above, plaintiff is entitled to be placed in the position *it* would have occupied had the Contract been fulfilled.  See Merrill Lynch & Co., 500 F.3d at 185.  It

13

is plaintiff's burden to demonstrate what position it would have been in—i.e., the amount of damages *BASF* suffered—through sufficient evidence.  See Greyhound Exhibitgroup, 973 F.2d at 158.

Here, as plaintiff acknowledges, defendant agreed to purchase a minimum of $307,000.00 worth of BASF products from BASF authorized *distributors*, not from plaintiff directly.  See Supp. Mem. at 1, 3; see also Requirements Agreement ¶ 2 (requiring that defendant "purchase from an authorized BASF *distributor* one hundred percent (100%) of [its] Refinish Products requirements" (emphasis added)).  Even assuming *arguendo* that plaintiff would have profited from defendant's continued purchase of Refinish Products from BASF distributors, plaintiff has provided no documentation or other proof as to what monetary benefit BASF would have derived had defendant fulfilled the minimum purchase requirement; when the Court questioned the basis for plaintiff's assumption that BASF suffered damages in the amount of the unfulfilled minimum purchase balance, see 11/24/2021 Order at 1, plaintiff offered no supporting evidence whatsoever.[4]  Nor is plaintiff able to point to any contractual liquidated damages provision requiring that defendant pay BASF all or any portion of defendant's unfulfilled minimum purchase requirement in the event of a breach.

When faced with similar deficiencies, courts in other jurisdictions have repeatedly declined to award BASF contractual damages based on the defendant's unfulfilled minimum purchase requirement.  See, e.g., BASF Corp. v. Savage, Civil Action No. ELH-19-3597, 2021 WL 1312903, at *4 (D. Md. Apr. 8, 2021) (declining to award BASF the "purchase

---

[4] Plaintiff simply asserted, in counsel's unsworn and unsubstantiated supplemental memorandum, that BASF "could have made additional sales without material expenditures and overhead expenses beyond those that would have been incurred but for Defendant's breach."  Supp. Mem. at 3.

balance" of the minimum purchase requirement because the parties' contract did "not include any provision that required defendant to pay plaintiff for the difference between the amount of Refinish Products that it purchased and the minimum purchase requirement"); BASF Corp. v. Alpha Car Ctr., Inc., Case No. CV 20-0246 FMO (MAAx), 2021 U.S. Dist. LEXIS 10449, at *13-14 (C.D. Cal. Jan. 20, 2021) (declining to award BASF damages in the amount of the unfulfilled minimum purchase requirement where BASF "submitted no calculation or manner of proving its expectation damages at all and leaves the court to speculate as to this portion of its damages"); BASF Corp. v. VAG Auto Body, LLC, Civil Action No. 1:20cv0019 (RDA/JFA), 2020 WL 6494917, at *4 (E.D. Va. June 12, 2020) (recommending that BASF's similar damages request be denied where the contract similarly lacked a provision requiring that, "if the agreement is terminated for any reason, defendant would have to pay plaintiff for the difference between the amount of Refinish Products that it had purchased and [the minimum purchase requirement]"), adopted, 2020 WL 6493426 (E.D. Va. Nov. 4, 2020); Exotic Collision Ctr., 2019 WL 6317772, at *5 (declining to award BASF expectation damages, where it failed to provide evidence of "the value of the unpurchased product" or proof of mitigation); Laguna Beach Collision Ctr., 2018 U.S. Dist. LEXIS 164701, at *13 (declining to award BASF the full contract price where BASF failed to argue or offer evidence regarding actual profits lost as a result of the defendant's breach); BASF Corp. v. Nu-Vision, LLC, Case No.: 6:09-cv-894-MSS-DAB, 2010 WL 11626579, at *4-5 (M.D. Fla. Sept. 27, 2010) (despite a sworn statement from a BASF representative averring that "BASF employs a confidential and proprietary formula that has been a reliable predictor of expected profits on all Supply Agreements that are fully performed[,]" court declines to award damages for lost

profits where "BASF fail[ed] to provide sufficient data or other information to allow the Court to judge the accuracy of the lost profits estimation"); but cf. Gabriel's Collision, 2022 U.S. Dist. LEXIS 7238, at *7-8 (recommending that BASF be awarded damages arising out of the unfulfilled minimum purchase requirement where the contract included a specific provision concerning such damages).

For the foregoing reasons, plaintiff has not adequately shown it is entitled to any portion of the outstanding $294,393.00 of the $307,000.00 minimum purchase requirement. This Court therefore respectfully recommends that the District Court deny plaintiff's request for damages in the amount of defendant's unfulfilled minimum purchase requirement.

## B.    Unrefunded Consideration

Plaintiff further requests $35,000.00 related to the nonrefunded consideration paid by plaintiff to defendant. See Pl. Mem. at 7-8. Here, plaintiff alleges, and the Contract provides, that plaintiff was required to pay defendant $35,000.00 in consideration for defendant's fulfillment of its obligations under the Contract, and, in the event of the agreement's termination, or the sale of defendant's business, defendant is required to return one hundred percent of the consideration paid. See Compl. ¶¶ 11-12; Requirements Agreement ¶ 3. As noted *supra*, the Court accepts as true the undisputed allegation in the Complaint that BASF paid defendant the contractually required consideration ($35,000.00), see Compl. ¶ 11, and defendant breached the Contract by ceasing to purchase BASF Refinish Products beginning in December 2018, see id. ¶ 15. Plaintiff has submitted the declaration of Frank Ruta—a BASF Regional Business Manager for the Automotive Refinish Business—confirming that BASF paid the $35,000.00 consideration to defendant, who refused and failed to refund that amount. See

Declaration of Frank Ruta, BASF Regional Business Manager (docketed on Mar. 5, 2021) ¶¶ 5, 11, DE #13-2.  Thus, this Court respectfully recommends awarding plaintiff the unrefunded $35,000.00 in damages.  See, e.g., Gabriel's Collision, 2022 U.S. Dist. LEXIS 7238, at *7-8 (recommending that BASF be awarded the unrefunded consideration owed under the terms of the contract at issue).

### C.    BASF Equipment

Finally, plaintiff requests that the Court include in its damages award $21,000.00, which plaintiff asserts is the market value of the BASF equipment that it loaned to defendant. See Pl. Mem. at 1, 7.  While the Contract sets forth which BASF equipment was to be loaned to defendant, the document does not specify the value of said equipment.  See Requirements Agreement ¶ 5.  Nor has plaintiff submitted any documentation in support of its claim that the BASF equipment is worth $21,000.00, despite the Court's request that it address this issue. See 11/24/2021 Order; see also 12/16/2021 Order.  Because plaintiff bears the burden of demonstrating to the Court that it is entitled to the damages requested, and plaintiff has failed to establish the market value of the BASF equipment (in the aggregate or otherwise), this Court recommends that plaintiff not be awarded an additional $21,000.00 in damages in connection with the loaned equipment.

## VII.    Interest

### A.    Pre-Judgment Interest

"New York choice of law principles dictate that the law of the jurisdiction whose law determined liability controls also the allowance of pre-judgment interest."  Master Grp. Glob. Co., Ltd. v. Toner.Com Inc., 19-CV-6648 (AMD), 2020 WL 5260581, at *11 n.22

(E.D.N.Y. Aug. 10, 2020) (internal quotation marks and citation omitted), adopted, 2020 WL

5259057 (E.D.N.Y. Sept. 3, 2020).  Since the Court has applied New York law to plaintiff's

claims, New York law likewise governs the award of pre-judgment interest.  Although the

Complaint requests pre-judgment interest, see Compl., *ad damnum* clause, plaintiff's motion

for default judgment fails to request pre-judgment interest, see generally Pl. Mem., and its

Proposed Judgment reflects an amount that does *not* include any pre-judgment interest, see

Proposed Order on Motion for Default Judgment (Mar. 5, 2021), DE #13-8; see also Pl. Mem.

at 8.  The Court therefore recommends that no pre-judgment interest be awarded to plaintiff.

### B.    Post-Judgment Interest

As to post-judgment interest, which is governed by federal statute, 28 U.S.C. §

1961(a), see Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008), "an award of post-

judgment interest is mandatory," and is calculated at the statutory rate set forth by 28 U.S.C. §

1961(a), see MRC Indus., Inc. v. Global Therapy Sys., LLC, No. 06–CV–3633 (JS)(WDW),

2009 WL 2461106, at *4 (E.D.N.Y. Aug. 7, 2009) (citing Schipani, 541 F.3d at 165).

Accordingly, plaintiff should be awarded post-judgment interest on its monetary award,

to be calculated using the federal rate set forth in 28 U.S.C. § 1961(a), from the date the Clerk

of the Court enters judgment in this action until the date of payment.

## VIII.   Costs[5]

Plaintiff also seeks $622.50 in costs, consisting of $400.00 for the court filing fee and $222.50 relating to service of process.  See Pl. Mem. at 8; Declaration of Caroline C. Marino, Counsel for Plaintiff (docketed on Mar. 5, 2021) ¶¶ 7-8, DE #13-4.  In support of its application for costs, plaintiff has proffered receipts documenting each of these expenditures. See Filing Fee Payment Confirmation (docketed on Mar. 5, 2021) at 2, DE #13-6 (receipt confirming $400.00 filing fee); Service of Process Invoices (docketed on Mar. 5, 2021) at 2-3, DE #13-7 (receipts confirming $222.50 in service-of-process fees).

In calculating costs, federal courts sitting in diversity look to Rule 54(d)(1) of the FRCP, which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1); see Baker v. Power Sec. Corp., 174 F.R.D. 292, 294 (W.D.N.Y. 1997) ("Except in rare circumstances in which some important state interest is implicated, . . . the awarding of costs in an action in federal court is controlled by federal law, specifically Rule 54 and 28 U.S.C. §§ 1821 and 1920." (citations omitted)).  Plaintiff is therefore entitled to reasonable costs relating to its filing fee and for service of process.  Accordingly, the Court recommends that plaintiff be awarded costs in the amount of $622.50.

---

[5] While the Complaint seeks an award of attorneys' fees, plaintiff appears to have abandoned this request in its motion for default judgment.  In any event, plaintiff has not submitted the requisite documentation to support an award of attorneys' fees and there is no fee-shifting provision in the Contract that would permit such an award. See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) ("[T]he general rule in New York" is that "attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." (citations omitted)); see also Cty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., L.P., 636 F.Supp.2d 159, 179 (N.D.N.Y. 2009) ("[A]ttorneys' fees must be 'documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.'" (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)), aff'd, 391 Fed.App'x 3 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court grant in part and deny in part plaintiff's motion for default judgment, as follows: Plaintiff be granted default judgment on its breach of contract claim, and awarded a total of $35,000.00 in damages, together with post-judgment interest pursuant to 28 U.S.C. § 1961(a), and costs totaling $622.50.  This Court further recommends that plaintiff be denied default judgment with respect to its claim for unjust enrichment and that this claim be dismissed as duplicative. Plaintiff should not be awarded $21,000.00 in damages for the purported value of the loaned BASF equipment or $294,393.00 in damages related to the unfulfilled minimum purchase requirement.  Finally, the Court recommends that the District Court decline to issue a declaratory judgment in this case.

Any objections to this Report and Recommendation must be filed with the Honorable Nicholas G. Garaufis on or before February 22, 2022.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is respectfully requested to docket this Report and Recommendation into the ECF court file and to mail copies to defendant at the following addresses:

> Prime Auto Collision Inc. d/b/a Prime Auto
> c/o Secretary of State
> 99 Washington Avenue
> Albany, NY 12210

Prime Auto Collision Inc. d/b/a Prime Auto
1153 60th Street
Brooklyn, NY 11219

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**February 4, 2022**

/s/ ***Roanne L. Mann***

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

21